IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT SCOTT | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 10-5368 |
| ADRIANNO CARETTE, ET AL. | : | |

**SURRICK, J.**                                                                **OCTOBER 31, 2013**

## MEMORANDUM

Presently before the Court is Defendant Adriano Carrete's[1] Motion to Dismiss (ECF No. 31), and Defendants Corrections Officers Stephany, Sowell, Joe Aquino, and Sergeant Verosky's Partial Motion to Dismiss (ECF No. 37). For the following reasons, Defendants' Motions will be denied.

**I.  BACKGROUND**

    **A.  Procedural History**

Plaintiff Robert Scott applied for *in forma pauperis* status on October 12, 2010, which was granted on October 14, 2010. (ECF Nos. 1, 2.) Proceeding *pro se*, Plaintiff filed a Complaint on October 15, 2010. (ECF No. 3.) Plaintiff was then appointed counsel on November 4, 2011. (ECF No. 5.) Once represented by counsel, Plaintiff filed an Amended Complaint on November 6, 2012. (Am. Compl., ECF No. 29.) In the Amended Complaint, Plaintiff asserts three claims against Defendants. In Counts I and II, Plaintiff alleges violations of his Eighth Amendment right to be free from cruel and unusual punishment. He seeks relief under 42 U.S.C. § 1983. Specifically, Plaintiff alleges a claim for the use of malicious and

---

[1] Plaintiff misspelled Defendant Adriano Carrete's name in the pleadings as Carette. Going forward we will use the proper spelling of Defendant Carrete's name.

sadistic excessive force (Count I) and a claim for failure and refusal to protect (Count II). In Count III, Plaintiff alleges a claim under Pennsylvania law for intentional infliction of emotional distress based upon extreme outrageous conduct.

On November 12, 2012, Defendant Corrections Officer Adriano Carrete ("CO Carrete") filed a Motion to Dismiss the Amended Complaint for failure to state a claim. (CO Carrete's Mot., ECF No. 31.) Plaintiff filed a response to CO Carrete's Motion on December 3, 2012. (ECF No. 34.) On January 2, 2013, Defendants Corrections Officers Stephany, Sowell, Joe Aquino, and Sergeant Verosky (the "Commonwealth Defendants") filed a Motion to Dismiss Count III of the Amended Complaint. (Commonwealth Defendants' Mot., ECF No. 37.) Plaintiff filed his response to the Commonwealth Defendants' Motion on January 25, 2013. (ECF No. 40.)

### B. Factual History[2]

Plaintiff is a 71 year-old male who was incarcerated at the State Correctional Institution at Graterford ("SCI Graterford") from January 28, 2009 to February 17, 2009. (Am. Compl. ¶¶ 10-11.) Defendants are corrections officers who worked for the Pennsylvania State Department of Corrections ("DOC") during that same time period. (*Id.* at ¶¶ 5-9.) When Plaintiff arrived at SCI Graterford on January 28, 2009, he requested to be placed in protective custody because of the nature of his conviction and his age. (*Id.* at ¶ 12.) That same day, Plaintiff's request was granted, and he was placed in L block. (*Id.*) On January 30, 2009, Defendant Sergeant Verosky loudly made reference to Plaintiff's criminal conviction so that others on the block could hear.

---

[2] In considering Defendants' Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *DelRio-Mocci v. Connolly Props., Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (quoting *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 83 (3d Cir. 2011)). We rely on the operative facts as presented in Plaintiff's Amended Complaint.

He stated, "We have a babyf------ on the block" and pointed to Plaintiff's cell. (*Id.* at ¶ 14.) After the announcement, Plaintiff started being harassed by corrections officers and other inmates. (*Id.* at ¶ 16.) For instance, on two occasions, Plaintiff was handed a food tray by corrections officers that contained garbage instead of a dinner meal. (*Id.* at ¶¶ 30, 32.) One such occasion occurred on February 15, 2009, when Defendant Corrections Officer Joe Aquino ("CO Aquino") handed Plaintiff a tray full of garbage. (*Id.* at ¶ 32.) When Plaintiff asked for an actual dinner meal, CO Aquino forced the tray into Plaintiff's cell. (*Id.* at ¶ 33.) Correction officers also falsely told Plaintiff that his prison property had been destroyed and denied Plaintiff's requests to contact his wife or his attorney. (*Id.* at ¶¶ 28-29, 31.)

Other treatment that Plaintiff complained about includes an incident in February 2009 when he was denied access to a working toilet. (*Id.* at ¶¶ 18-25.) On February 2, 2009, Plaintiff reported to corrections officers that his toilet had stopped flushing. (*Id.* at ¶ 18.) The toilet was repaired the next day, but Plaintiff was accused of sabotaging the toilet and threatened with discipline. (*Id.* at ¶ 19.) After the toilet was repaired, it continued to malfunction, and each time, Plaintiff reported the issue to corrections officers. (*Id.* at ¶¶ 20-21, 26.) On February 10, 2009, water for the toilet in Plaintiff's cell was shut-off because of the continued toilet malfunctions. (*Id.* at ¶ 22.) At that time, Plaintiff asked to be transferred to a different cell with a working toilet, but those requests were ignored. (*Id.* at ¶ 23.) Plaintiff lived in his cell for days without a working toilet. (*Id.*) On February 21, 2009, Plaintiff informed Defendant Sergeant Verosky that he needed to use a toilet to defecate and asked to use a working toilet. (*Id.* at ¶ 24.) Verosky denied the request. (*Id.*) As a result, Plaintiff resorted to removing the feces from his toilet into empty milk cartons to minimize the smell and prevent the toilet from overflowing. (*Id.* at ¶ 25.)

On another occasion, Sergeant Verosky took Plaintiff to an office and "displayed" him to another corrections officer stating, "[t]his is the pervert I was telling you about." (*Id.* at ¶ 27.)

The final incident of which Plaintiff complains involves his transfer from SCI Graterford to SCI Camp Hill. On February 17, 2009, Plaintiff was awoken to be transferred to SCI Camp Hill. (*Id.* at ¶ 34.) At around 5:00 a.m., Plaintiff was taken to the processing area and then to a second room to be strip searched, showered, and handcuffed. (*Id.* at ¶ 35.) When entering the second room, Plaintiff was confronted by CO Carrete who began to verbally abuse Plaintiff, citing his criminal conviction, and stating that he wished he could kill Plaintiff. (*Id.* at ¶¶ 36-37.) While Plaintiff was handcuffed, CO Carrete grabbed Plaintiff and threw him against the wall and punched him on the left side of his head. (*Id.* at ¶¶ 38-41.) Plaintiff's head hit the cinderblock wall, causing a large and painful bump. (*Id.* at ¶ 39.) Plaintiff was then ordered to shower and stand with his nose against a wall. (*Id.* at ¶¶ 42-43.) After approximately 30-45 minutes, Plaintiff passed out. (*Id.*) During this time, Defendant Corrections Officer Sowell ("CO Sowell") was on duty and permitted Plaintiff to sit in a chair, but he did not intervene to stop CO Carrete's treatment of Plaintiff. (*Id.* at ¶ 44.) Then, at approximately 6:00 a.m., Plaintiff was moved to a hallway next to the door of a holding cell where more than 20 inmates were waiting for the transport bus. (*Id.* at ¶ 45.) Plaintiff recognized that some of the waiting inmates had been housed across from Plaintiff's cell and knew the nature of Plaintiff's criminal charges. (*Id.*) When the inmates started to verbally abuse and spit on Plaintiff, he tried to move away from the door, but was pushed back by CO Carrete. (*Id.* at ¶¶ 47-48.) Plaintiff and the other inmates were then moved to the vehicle lock area where an unknown person punched Plaintiff on the right side of his head, causing Plaintiff injury. (*Id.* at ¶¶ 49-50.) Plaintiff was next placed in a wire cage near the back of the bus for transport to SCI Camp Hill. (*Id.* at ¶ 51.) During the two-and-a-half

4

hour bus trip, a group of four or five inmates verbally threatened Plaintiff, spit on him, and urinated on him. (*Id.* at ¶ 53.) Neither CO Carrete, the transporting corrections officer, nor Defendant Corrections Officer Stephany ("CO Stephany"), the bus driver, did anything to stop the inmates' actions toward Plaintiff. (*Id.* at ¶¶ 52, 54.) When the bus arrived at SCI Camp Hill, COs Carrete and Stephany joked about what a good time the inmates had had at Plaintiff's expense. (*Id.* at ¶ 55.) Plaintiff reported the incident to prison and medical staff at SCI Camp Hill when he arrived. (*Id.* at ¶ 58.)

As a result of the incidents with Defendants, Plaintiff has suffered physical and emotional trauma. (*Id.* at ¶¶ 50, 56-57.) Specifically, Plaintiff suffered from a raised bruise on his skull, a bruised jaw, and a bruised cheekbone. (*Id.* at ¶ 56.) Because of these injuries, Plaintiff has had difficulty talking and eating. (*Id.*) Plaintiff has filed grievances with regard to these incidents, and has exhausted his administrative remedies. (*Id.* at ¶ 59.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Failure to state a claim upon which relief can be granted is basis for dismissal of the complaint. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal

5

evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "A complaint may not be dismissed because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *McTernan v. City of York,* 564 F.3d 636, 646 (3d Cir. 2009).

In determining whether dismissal is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id.* at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 211. Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *See McTernan,* 577 F.3d at 530 (quoting *Iqbal,* 556 U.S. 663-64).

### III. DISCUSSION

Before the Court are Defendants' Motion to Dismiss and Partial Motion to Dismiss. Specifically, CO Carrete seeks dismissal of Counts I-III and the Commonwealth Defendants seek dismissal of Count III.

#### A. Count I

Counts I and II make claims against Defendants under 42 U.S.C. § 1983, which provides in relevant part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

6

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

In Count I, Plaintiff alleges that CO Carrete used malicious and sadistic excessive force on him in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff seeks redress through 42 U.S.C. § 1983. CO Carrete seeks dismissal of this § 1983 claim on the grounds that Plaintiff failed to plead an essential element of the claim: that CO Carrete was acting under the color of state law when he allegedly used excessive force against Plaintiff. Plaintiff responds that, in the Amended Complaint, he did allege that CO Carrete was acting under color of state law by claiming that Corrections Officer Carrete was an employee of the Pennsylvania DOC when he threw Plaintiff, who was handcuffed, against a concrete wall and punched him in the left side of his head.

"Acts of a state or local employee in her official capacity will generally be found to have occurred under color of state law." *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994) (citing *West*, 487 U.S. at 49); *see also Parratt v. Taylor*, 451 U.S. 527, 535-36 (1981) (finding conduct by state prison officials was "under color of state law"), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). This is true "whether the complained of conduct was in furtherance of the state's goals or constituted an abuse of official power." *Barna*, 42 F.3d at 816.

In the Amended Complaint, Plaintiff alleges that CO Carrete was employed by the Pennsylvania DOC as a corrections officer when he threw Plaintiff against the wall and punched him. Plaintiff also alleges that, when this incident occurred, CO Carrete was carrying out his

7

duties as a correctional officer by preparing inmates for transfer from SCI Graterford to SCI Camp Hill. Since Plaintiff alleges that the acts complained of were committed by CO Carrete during the performance of his duties as a state correctional officer, Plaintiff has provided facts sufficient to establish that CO Carrete was acting "under color of state law." Accordingly, we will deny CO Carrete's Motion with respect to Count I.[3]

### B. Count II

In Count II, Plaintiff, brings a second §1983 claim alleging that CO Carrete and the Commonwealth Defendants failed and refused to protect Plaintiff's health and safety, in violation of his Eighth Amendment rights. CO Carrete claims that Count II must be dismissed as to him again arguing that Plaintiff failed to allege that he was acting under color of state law. In addition, CO Carrete argues that Plaintiff failed to plead sufficient facts to support his claim, failed to plead that CO Carrete was personally involved in any violation of Plaintiff's Eighth Amendment rights, and failed to plead that CO Carrete had the requisite mens rea to support a violation of the Eighth Amendment. Finally, CO Carrete claims that Count II is duplicative of Count I. Plaintiff responds that he did allege that CO Carrete was acting under color of state law because he alleged that CO Carrete was an employee of the Pennsylvania DOC at the time of the incidents at issue. Plaintiff also claims that he complied with all pleading requirements by including sufficient factual allegations to state a claim for relief that is plausible on its face, by specifically alleging that CO Carrete personally acted in ways that placed Plaintiff at substantial risk of harm, and by pleading facts that support an inference that CO Carrete had the requisite mental state. For the following reasons, CO Carrete's Motion will be denied.

---

[3] In his Motion to Dismiss, CO Carrete did not challenge the sufficiency of Plaintiff's claim that his Eighth Amendment rights were violated when CO Carrete allegedly used excessive force on him.

*1. Constitutional Claim*

"The first step in evaluating a Section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Here, Plaintiff claims CO Carrete failed to protect Plaintiff from being assaulted by other inmates in violation of his Eighth Amendment rights. "To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Plaintiff plausibly alleges that he was placed in conditions that posed a substantial risk of serious harm to him during his transfer from SCI Graterford to SCI Camp Hill. A substantial risk of serious harm exists when a condition exists that is "objectively sufficiently serious." *Hamilton v. Leavy*, 117 F.3d 742, 746-47 (3d Cir. 1997) (finding lower court erred when it failed to consider the prison disciplinary team's recommendation that prisoner be placed in protective custody as evidence that prisoner faced a substantial risk of serious harm in the general population). Plaintiff was placed in protective custody in part due to the nature of his convictions, and he suffered a campaign of harassment from other inmates after they were told by prison personnel of the nature of his convictions. *Renchenski v. Williams,* 622 F.3d 315, 326 (2010) (stating "[i]t is largely without question . . . that the sex offender label severely stigmatizes an individual, and that a prisoner labeled as a sex offender faces unique challenges in

9

the prison environment" and citing studies supporting the proposition that inmate norms call for the savage beating of sex offenders). He also specifically alleges that the inmates who were transported with him knew the nature of his convictions. Plaintiff further alleges that the inmates he was transferred with verbally abused and spit on him through a holding-cell door before they even got into the van to be transferred to Camp Hill with Plaintiff. From these facts, it is reasonable to infer that Plaintiff faced a substantial risk of serious harm when he was transferred with inmates who knew the nature of his convictions and verbally abused him during preparations for the transfer.

Plaintiff also adequately pled that CO Carrete personally acted with deliberate indifference by failing to prevent the inmates from assaulting Plaintiff leading up to and during transport. "Deliberate indifference" is a subjective standard, under which the defendant must actually have known or been aware of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). Therefore, CO Carrete must have been "aware of facts from which the inference would be drawn that a substantial risk of serious harm exist[ed], and he must also draw the inference." *Farmer*, 511 U.S. at 837. Circumstantial evidence can be used to establish that CO Carrete knew of the risks posed to Plaintiff's safety, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Bistrian*, 696 F.3d at 367 (citing *Farmer*, 511 U.S. at 842); *see also Beers-Capitol*, 256 F.3d at 133 (noting an excessive risk can be "so obvious that the official must have known the risk").

In the Amended Complaint, Plaintiff presents circumstantial evidence that CO Carrete knew the risk Plaintiff faced when being transported with these inmates. Plaintiff alleges that CO Carrete knew the nature of Plaintiff's conviction and was present when inmates were

10

verbally abusing and spitting on him before the transfer. Because CO Carrete witnessed inmates harassing Plaintiff before the transfer, it is certainly plausible that he knew Plaintiff would face an excessive risk of harm when he was transported with those same inmates. Still, CO Carrete took no measures to guarantee Plaintiff's safety. Even though evidence may later show that CO Carrete's actions were reasonable, *see Farmer*, 511 U.S. at 845, at this juncture, Plaintiff has alleged sufficient facts to establish that CO Carrete knew that Plaintiff faced a risk and he acted with deliberate indifference to such risk by taking no measures to protect Plaintiff. Moreover, Plaintiff has also alleged that because no measures were taken to protect him from other inmates during transfer, he was in fact physically harmed when another inmate punched him in the head while in the vehicle lock area.

Plaintiff also claims that CO Carrete acted with deliberate indifference when he failed to intervene when the inmates were verbally abusing, spitting, and urinating on him during the two-and-a-half hour transport.[4] "[I]f an officer witnesses an inmate assault and fails to intervene, his actions would seemingly constitute a paradigm case of deliberate indifference" unless the prison official acted reasonably. *Bistrian*, 696 F.3d at 371-72 (internal quotations omitted) (finding failure to protect claim that alleged corrections officer waiting several minutes to intervene in inmate assault raised enough questions about the reasonableness of the corrections officer's response to survive a motion to dismiss). Plaintiff claims that CO Carrete was the transporting officer on the bus when the inmates assaulted Plaintiff, and that CO Carrete did not intervene in the assault. After the two-and-a-half hour transport, CO Carrete joked about what "a good time" the inmates had had at Plaintiff's expense during the transport, confirming that he was aware that

---

[4] We recognize that verbal abuse of an inmate by itself does not violate the Eighth Amendment. *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012). In this case, Plaintiff was not only verbally abused; he was physically spit on and urinated on by other inmates.

11

the assaults took place. These facts permit the inference that CO Carrete knew Plaintiff was being assaulted during the transport and nevertheless failed to intervene; raising questions about the reasonableness of CO Carrete's response and supporting the conclusion that CO Carrete acted with deliberate indifference towards Plaintiff's safety.

Plaintiff has stated a plausible claim that CO Carrete personally violated his constitutional duty to protect Plaintiff from inmate violence by being deliberately indifferent to the risks posed to Plaintiff during his transfer from SCI Graterford to SCI Camp Hill. Accordingly, CO Carrete's arguments that Plaintiff failed to plead sufficient facts or the requisite mens rea to support a failure to protect claim against CO Carrete must fail. CO Carrete's argument that Plaintiff failed to plead the personal involvement of CO Carrete similarly fails. Plaintiff clearly alleges that CO Carrete, himself, failed to protect Plaintiff through his own personal actions or inaction.

### 2. *Acting Under Color of State Law*

CO Carrete also argues that Plaintiff's failure to protect claim must fail because Plaintiff does not allege that CO Carrete was acting under color of state law. As discussed above, a state employee acting in his or her official capacity is generally acting under color of state law. *See Barna*, 42 F.3d at 816. Also as discussed above, Plaintiff has alleged that CO Carrete was employed by the Pennsylvania DOC as a corrections officer, and that CO Carrete was acting as the transporting corrections officer when he allegedly did not protect Plaintiff during the transfer from SCI Graterford to SCI Camp Hill. These facts clearly allege that CO Carrete was acting under color of state law. CO Carrete's argument is without merit.

### 3. *Duplication*

Finally, CO Carrete argues that Plaintiff's Count II is duplicative of Count I. In Count I, Plaintiff brings a claim for malicious use of excessive force claim with regard to CO Carrete's treatment of Plaintiff while Plaintiff was being prepared for transfer. In Count II, Plaintiff brings a failure to protect claim against CO Carrete for his failure to protect Plaintiff from inmate violence during the transfer. These claims are not the same. They are not duplicative. CO Carrete's motion to dismiss Count II will be denied.

### C. Count III

In Count III, Plaintiff brings a Pennsylvania state law claim against all Defendants for intentional infliction of emotional distress ("IIED"). The Commonwealth Defendants moved to dismiss this count arguing that they were acting within the scope of their employment and are shielded from liability based on the doctrine of sovereign immunity. Plaintiff claims that sovereign immunity does not apply because the Commonwealth Defendants were acting outside the scope of their employment. In addition, CO Carrete claims that Count III should be dismissed because Plaintiff failed to plead the elements of a claim for IIED and because CO Carrete's conduct cannot support a claim for IIED.

#### 1. *Sovereign Immunity*

The Commonwealth of Pennsylvania, as well as its parties, officials, and agencies are protected from liability for intentional torts by the doctrine of sovereign immunity, unless the cause of action falls within a statutory exception or the individual's conduct falls outside the scope of his or her employment.[5] 1 Pa. Con. Stat. Ann. § 2310; 42 Pa. Con. Stat. Ann. § 8522;

---

[5] The statutory exceptions to sovereign immunity are: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and

13

*Bolden v. Pa. Bureau of Prisons*, No. 11-0467, 2011 WL 4974489, at *4 (E.D. Pa. Oct. 19, 2011); *Waters v. Tennis*, No. 04-2497, 2006 WL 2136248, at *3 (M.D. Pa. July 28, 2006). An employee's acts are within the scope of his or her employment when they: (1) are the kind that the employee is employed to perform; (2) occur substantially within the job's authorized time and space limits; (3) are motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by the employer. Restatement (Second) Agency § 228; *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (stating that Pennsylvania has adopted the scope of employment definition of the Restatement); *see also Wesley v. Hollis*, No. 03-3130, 2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007).

Plaintiff alleges that the Commonwealth Defendants were all employed by the Pennsylvania DOC when the acts at issue occurred. As such, they are protected by sovereign immunity. Plaintiff also alleges that the actions at issue occurred at the DOC when the Commonwealth Defendants were working for the DOC. The remaining issues, then, are whether the Commonwealth Defendants' actions were of the kind that they were employed to perform, were motivated by a desire to serve the DOC, and where force was used, whether it was unexpectable by the employer.

### i. Sergent Verosky

After Plaintiff was placed in protective custody, Sergeant Veroksy loudly referenced the nature of Plaintiff's convictions by saying "We have a babyf----- on the block" and pointing to Plaintiff's cell. (Am. Compl. ¶ 14.) *See Johnson v. Townsend*, No. 03-2277, 2005 WL 2990695, at *4 (M.D. Pa. Nov. 8, 2005) (finding that defendant corrections officer had acted outside of the

---

vaccines. 42 Pa. Con. Stat. Ann. § 8522(b). None of these exceptions apply to the facts before us.

scope of his employment by inciting violence through the "spreading of rumors and staring"). Sergeant Verosky also denied Plaintiff's request to use a working toilet after the water to Plaintiff's toilet was shutoff. Finally, Sergeant Verosky took Plaintiff to an office and displayed him to another officer, stating "this is the pervert I was telling you about." (Am. Compl. ¶ 27.) Viewing these allegations in a light most favorable to Plaintiff, as we must, clearly there is a serious issue as to whether Sergeant Verosky's actions were motivated by a desire to serve the DOC or motivated by personal animus and were outside the scope of Verosky's employment. Consequently, at this juncture, we cannot conclude that Sergent Verosky is protected by sovereign immunity.

### ii. CO Aquino

Plaintiff alleges that CO Aquino served him a dinner tray full of garbage, and that when Plaintiff asked for a tray of actual food, CO Aquino forced the tray of garbage into Plaintiff's cell. *Robus v. Pa. Dep't of Corr.*, No. 04-2175, 2006 WL 2060615, at *8 (E.D. Pa. July 20, 2006) ("[A]n assault committed by an employee upon another for personal reasons . . . is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment.") (citing *R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 700 (Pa. Super. Ct. 2000)). Taking Plaintiff's allegations as true, it is difficult to conclude that CO Aquino was motivated by a desire to serve the DOC. After discovery we will be in a position to better assess CO Aquino's conduct and the motivations or reasons therefore. *See Strothers v. Nassan*, No. 08-1624, 2009 WL 976604, at *10 (W.D. Pa. Apr. 9, 2009) (noting that plaintiff is entitled to discovery into the "reasons" a defendant who is claiming sovereign immunity acted).

### iii. CO Sowell and CO Stephany

15

Both CO Sowell and CO Stephany are alleged to have failed to intervene when Plaintiff was being assaulted. Plaintiff alleges that CO Sowell was present when Plaintiff was assaulted by CO Carrete, yet failed to intervene and stop the assault. Likewise, Plaintiff alleges CO Stephany was driving the bus when Plaintiff was verbally assaulted, spit on, and urinated on by other inmates, and he failed to intervene. Again, at this juncture, whether CO Sowell and CO Stephany were acting within the scope of their employment cannot be determined. Such a determination would be premature. *Viera v. Wenerowicz*, No. 10-1717, 2011 WL 3584769, at *6 (M.D. Pa. Aug. 15, 2011) (denying corrections officer's motion to dismiss claim for intentional infliction of emotional distress because court could not as a matter of law find that corrections officers were acting within the scope of their employment when they ignored plaintiff's request for medical care). *But see Wesley*, 2007 WL 1655483, at *16 (finding supervisor who was alleged to have failed to intervene immune on all state claims because he was clearly acting within the scope of his employment by supervising corrections officers, regardless of whether he properly or adequately supervised them). Because serious questions remain regarding the conduct of the Commonwealth Defendants and whether they were acting within the scope of their employment, their Motion will be denied.

2. *Elements of Intentional Infliction of Emotional Distress*

"[T]he Supreme Court of Pennsylvania would recognize the tort of intentional infliction of emotional distress as described in Restatement (Second) of Torts § 46 (1965)." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 217 (3d Cir. 2001). To establish a claim for IIED, a plaintiff must prove: (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant's conduct caused a person severe emotional distress; and (3) that the defendant acted intending to cause that person such distress or with knowledge that such distress was

substantially certain to occur. *Id.* "In addition, a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (internal quotations omitted).

"Liability on an intentional infliction of emotional distress claim has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Reedy*, 615 F.3d at 231-32 (internal quotations omitted). Here, construing the evidence most favorable to Plaintiff, CO Carrete verbally assaulted Plaintiff, threw him up against a concrete wall when he was handcuffed, and then ordered him to stand with his nose against a wall for around 45 minutes, causing Plaintiff to pass out. In addition, CO Carrete failed to intervene when Plaintiff was verbally harassed, spit on, and urinated on by other inmates during a two-and-a-half hour bus ride. Few would disagree that such conduct, if it occurred, could be characterized as "outrageous!" *Kazatsky v. King David Mem. Park, Inc.*, 527 A.2d 988, 991 (1987) (quoting Restatement (Second) of Torts § 46 cmt. d). Therefore, we cannot conclude at this time that no relief could be granted under any set of facts that could be proved by Plaintiff. *See Garey v. Borough of Quakertown*, No. 12-799, 2012 WL 3562450, at *5 (E.D. Pa. Aug. 20, 2012) (finding police officers' use of Tasers on plaintiff when he was already subdued sufficiently outrageous to sustain intentional inflection of emotional distress claim at motion to dismiss stage); *Zimmerman v. Schaeffer*, 654 F. Supp. 2d 226, 257 (M.D. Pa. 2009) (finding plaintiffs presented enough evidence that defendant's conduct was outrageous when he used excessive force and subjected plaintiffs to unconstitutional conditions of confinement).

Plaintiff also sufficiently alleges the second element of a claim for intentional infliction of emotional distress: that Defendants conduct caused Plaintiff severe emotional distress.

17

Plaintiff claims that as a result of CO Carrete's actions, he suffered emotional trauma fearing contact with other guard and inmates. *Thompson v. Wynnewood of Lower Merion Twp.*, No. 12-2308, 2012 WL 4033706, at *12-13 (E.D. Pa. Sept. 13, 2012) (finding that plaintiff's description of officers' threatening statements and aggressive behavior permit the inference plaintiff suffered emotional distress to survive motion to dismiss). In addition, he alleges that he sought help from medical staff after the incidents, and that he suffered physical harm when CO Carrete threw him against the concrete wall. These allegations, accepted as true, are sufficient to support an IIED claim.

Finally, Plaintiff has alleged that CO Carrete acted with intent to cause Plaintiff distress. This satisfies the third element of a claim for intentional infliction of emotional distress. CO Carrete said that he wished he could kill Plaintiff before he engaged in the conduct that could be considered outrageous. This demonstrates that he intended that his actions would cause Plaintiff distress. Since Plaintiff has adequately pled all the elements of a claim of intentional infliction of emotional distress, Defendants' Motions must fail.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss will be denied. An appropriate order follows.

**BY THE COURT:**

_C.S.H._

_____

**R. BARCLAY SURRICK, J.**